UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff

vs.

ORONDE KHARI HAWKINS,

    Defendant.
_____/

Case No. 1:05-CR-281

HON. GORDON J. QUIST

## OPINION

Defendant Oronde Khari Hawkins was charged in a criminal complaint with conspiring to possess with intent to distribute more than 5 kilograms of cocaine and possessing with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 846, 841(a). Thereafter, Defendant filed a motion to suppress, seeking to exclude from evidence cocaine discovered in his vehicle and statements he made to the police following his arrest. In his brief, Defendant argued that the cocaine seized from his vehicle must be suppressed because the police did not have probable cause to search his vehicle, and that the statements he made to the police must be suppressed because he either did not receive his *Miranda* warnings or, if he did, he did not voluntarily and knowingly waive his *Miranda* rights. On February 16, 2006, the Court held a hearing on Defendant's motion to suppress. At the hearing, Defendant's counsel explained that the only issue he was contesting was the propriety of Defendant's arrest, not the *Miranda* issues. Because the Court concludes that probable cause existed to search Defendant's vehicle and, upon the discovery of cocaine in Defendant's vehicle, probable cause existed to arrest Defendant, the Court will deny Defendant's motion to suppress.

## I. Findings of Fact

On November 28, 2005, officers with the Kalamazoo Police Department and the Drug Enforcement Agency discovered two kilograms of cocaine in the possession of Larry Hinton and Kenneth Mann. Based upon the information provided by Hinton and Mann, officers focused their investigation as to the supplier of this cocaine on Larry Tillman. Hinton agreed to cooperate with the officers in their investigation of Tillman. Specifically, Hinton agreed to call Tillman to order five kilograms of cocaine. On November 30, 2005, over twenty telephone conversations were recorded between Hinton and Tillman. Tillman agreed to supply Hinton with the cocaine. Tillman told Hinton that the cocaine was coming from Indiana from his Hispanic male source. A surveillance officer was positioned outside Tillman's house. When Tillman told Hinton that the cocaine had arrived, a surveillance officer observed a Volkswagen Jetta with Indiana license plates occupied by two Hispanic males, arrive at Tillman's house. The Hispanic males arrived at 5:05 p.m. At 5:12 p.m., one of the Hispanic males exited Tillman's house, obtained a package from the Jetta, and re-entered the house. At 5:17 p.m., a vehicle with Defendant driving arrived at Tillman's house. The surveillance officer observed Defendant enter the residence. At 5:18 p.m., the surveillance officer observed the same Hispanic male again exit Tillman's house, obtain another package from the Jetta, and re-enter the house. At 5:30 p.m., Defendant and Tillman were observed exiting the house. One of them was carrying a bag. Defendant and Tillman entered the car that Defendant had driven to Tillman's house. Defendant got into the driver's seat while Tillman took the passenger's seat. Before Tillman left the residence with Defendant, he called Hinton and told him that he was ready to do the transaction.

Defendant and Tillman left Tillman's residence and drove in the direction of Hinton's apartment. While driving towards Hinton's apartment, the vehicle made evasive maneuvers. For

instance, the car would show a turn signal, but then not turn. The car would also turn abruptly without any turn signal. On one occasion, the car turned off the main road, darted down a side street, came back onto the main road without stopping on the side streets, and then continued to proceed in the direction of Hinton's apartment.

Eventually, the car pulled into a parking lot of a Bob Evan's restaurant, which was located directly south of Hinton's apartment. At this point, the officers who were following the vehicle made contact with the occupants. The officers had a K-9 drug detection dog as part of their team. The K-9 handler walked the dog around the outside of the vehicle, and the dog alerted to the presence of a controlled substance. The officers then searched the vehicle and discovered four kilograms of cocaine. Defendant and Tillman were then placed under arrest.

## II. Conclusions of Law

Despite Defendant's suggestion to the contrary, a search of a vehicle without a warrant is not per se unreasonable. *Carroll v. United States*, 267 U.S. 132, 153, 45 S. Ct. 280, 285 (1925) (holding that "contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant"). Rather, if an officer could fairly conclude that probable cause exists, namely, that there is a "fair probability that contraband or evidence of a crime will be found" in a vehicle, then police may search that vehicle. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2331-32 (1983).

In this case, a fair probability existed that evidence of criminal wrongdoing would be found in Defendant's vehicle. Officers arranged Hinton to order five kilograms of cocaine from Tillman. Tillman told Hinton that he would receive the drugs from an Hispanic source from Indiana. On the day the transaction was to consummate, a surveillance officer observed a Volkswagen Jetta with Indiana license plates, occupied by two Hispanic males, arrive at Tillman's house. The surveillance

officer observed one of the Hispanic males twice exit Tillman's house, obtain packages from the Jetta, and re-enter the house. Before Tillman and Defendant left Tillman's residence, Tillman called Hinton and told him that he was ready to conduct the transaction. As Tillman and Defendant exited the residence, one of them was observed carrying a bag. Tillman and Defendant entered Defendant's vehicle, with Defendant in the driver's seat and Tillman in the passenger's seat. The vehicle proceeded towards Hinton's apartment. On the way, the vehicle made evasive maneuvers, which a reasonable officer could conclude was an attempt by Defendant and Tillman either to determine if they were being followed or to lose anyone who might be following them. The vehicle eventually pulled into a Bob Evan's restaurant, which was located directly south of Hinton's apartment. At this point, the officers who were following the vehicle made contact with the occupants.[1] The officers had a K-9 drug detection dog as part of their team. The K-9 handler walked the drug detection dog around the vehicle, and the dog alerted to the presence of a controlled substance. Based upon these facts, an officer could fairly conclude that probable cause existed to search the vehicle. *See Jacob*, 377 F.3d at 580 n.5 (noting that probable cause existed to search a vehicle, which officers had legitimately stopped on the basis of reasonable suspicion, where a drug detection dog gave a positive indication to the presence of a controlled substance in the vehicle).

Upon searching Defendant's vehicle, officers discovered four kilograms of cocaine in a bag in the backseat. Once the officers discovered this cocaine, the officers had probable cause to arrest

---

[1] It is unclear whether the officers detained the occupants when they initially approached Defendant's vehicle upon entering the Bob Evan's parking lot by, for instance, either activating their flashing lights or by blocking in Defendant's vehicle. Even if the officers detained the occupants, however, the detention was lawful, as the officers could have reasonably suspected that the occupants were engaged in criminal wrongdoing. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968) (holding that an investigatory detention is permissible under the Fourth Amendment if supported by reasonable suspicion); *see also United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989) (noting that since an investigatory detention is less intrusive to one's personal security than an arrest, the level of suspicion necessary for such a detention is thus "considerably less than proof of wrongdoing by a preponderance of the evidence").

4

Defendant. *Maryland v. Pringle*, 540 U.S. 366, 373-74, 124 S. Ct. 795, 801 (2003) (finding probable cause to arrest three men in a vehicle in which cocaine was found for possession, even though none of the three men claimed ownership, as it was reasonable for the officers to infer a common enterprise among the three men).

### III.  Conclusion

Because the Court concludes that probable cause existed to search Defendant's vehicle, and, upon the discovery of the cocaine in Defendant's vehicle, probable cause existed to arrest Defendant, the Court will deny Defendant's motion to suppress.

An Order consistent with this Opinion will be entered.


Dated:  February 23, 2006                                    /s/ Gordon J. Quist
                                                     GORDON J. QUIST
                                                     UNITED STATES DISTRICT JUDGE